THERIOT, J.
1 ¡.This is an appeal from a final judgment by the Office of Workers’ Compensation (“OWC”) of a disputed claim for compensation between the appellant, New Orleans EMS (“EMS”) and the appellee, Janice Hill. For the following reasons, we partially modify, partially affirm, and partially reverse and vacate the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
Ms. Hill was employed by EMS as an emergency medical technician (“EMT”) in 2007. One of her duties as an EMT was to lift a stretcher carrying a patient, as well as other necessary medical equipment, up and into the back of an ambulance. According to Ms. Hill, her job required her to lift a maximum of 300-400 pounds and to be able to step into and out of the back of the ambulance frequently.
On April 11, 2007, Ms. Hill suffered injuries to the left side of her body when she lost her footing and fell out the back of the stationary ambulance in which she was working. She was transported to the Ochsner Clinic in New Orleans, where she was diagnosed with a contusion on her left hip, strained neck, and a benign head injury. EMS investigated the accident, agreed Ms. Hill’s injuries were compensa-ble, and began paying her total temporary disability benefits (“TTD”) on April 19, 2007, in the amount of $881.22 biweekly.
For the next two years, Ms. Hill sought medical treatment at Tulane University Hospital, primarily from Dr. Gregory Stewart. On May 13, 2009, Dr. Stewart reported that Ms. Hill had reached maximum medical improvement (“MMI”), but restricted her to medium duty with no climbing, bending, squatting, twisting, or crawling. This restriction effectively prevented Ms. Hill from returning to work as an EMT. As a result, her TTD |swas converted to supplemental earnings benefits (“SEB”) on November 1, 2010, starting at $1909.31 monthly, decreasing to $243.37 monthly.
Upon her change to SEB, Ms. Hill consulted vocational rehabilitation counselor Ronnie Ducote on August 28, 2009. Although Mr. Ducote was able to recommend potential job positions in her immediate area that complied with her work restrictions, Ms. Hill on her own accepted a full-time position as an emergency room technician at Ochsner Baptist Medical Center in New Orleans in December of 2009, with a starting pay rate of $12.31 per hour. She resigned from that position one month later.
EMS then requested that Mr. Ducote continue vocational rehabilitation with Ms. Hill, and Mr. Ducote did so shortly after Ms. Hill’s resignation. After two months, Mr. Ducote found five positions suitable for Ms. Hill, which were approved by Dr. Stewart. EMS then terminated vocational rehabilitation and reduced Ms. Hill’s SEB to $643.96 monthly on April 1, 2010.[1]
*43 One month prior, Ms. Hill filed a disputed claim for compensation, alleging that an appointment with Dr. Stewart was not timely approved by EMS. EMS filed a motion for summary judgment in response, claiming the SEB should have been reduced further due to her employment at Ochsner Baptist, and that it was entitled to a credit for the SEB overpayment as well. OWC ruled on November 3, 2010, that the SEB should be adjusted to $486.74,[2] beginning December 1, 2009, and that EMS was entitled to a credit of $6,627.84 for over-payments from December 1, 2009 to September 30,2010.
|4Ms. Hill continued to see Dr. Stewart for pain, and after he reviewed an MRI of her left hip and lower back, he concluded on August 23, 2011 that she was still “unable to work.” Dr. Stewart later clarified that statement in a letter to Ms. Hill’s counsel, dated September 29, 2011, by stating “Ms. Hill is unable to work at any job.” Although Ms. Hill had made some complaints about lower back pain, Dr. Stewart’s reports do not show that her inability to work was based on injury to her back, or whether any back injury was a result of the April 11, 2007 accident.
Ms. Hill had also been treated by Dr. Robert Steiner, an orthopedic surgeon, during the same span of time she had seen Dr. Stewart, although the visits with Dr. Steiner were less frequent. In Ms. Hill’s last recorded visit with Dr. Steiner on October 11, 2011, he concluded that she had sustained a contusion on her left hip, that the back pain she complained of was not related to her April 11, 2007 accident, and that she was not a candidate for surgery. He further concluded that she should be restricted to light duty and accordingly be referred to vocational rehabilitation.
Ms. Hill then saw a pain management specialist, Dr. Fred DeFrancesch, without EMS authorization, who could not determine if the pain in her hip came from an injury to her lower back. He therefore scheduled a discogram to aid him in the assessment, but EMS refused to authorize the procedure.
Ms. Hill filed a disputed claim for compensation on February 18, 2011, alleging that an MRI scheduled by Dr. Stewart was not timely authorized. The claim was amended on July 19, 2011, to include a claim for TTD and/or SEB without offset from September 30, 2010, onward, to authorize the evaluation by Dr. DeFrancesch, to change her disability status to TTD or partial SEB, and to award penalties and attorney fees against |sEMS. She also filed a motion to compel a medical examination by Dr. DeFrancesch on the same day.
On October 5, 2011, OWC issued an order on the motion to compel that Ms. Hill be granted her choice of physician, Dr. DeFrancesch, and awarded penalties in the amount of $2,000 and attorney fees of $1,500 against EMS. EMS filed a motion for new trial for reargument purposes only on the issue of the penalties and attorney fees, which were based on EMS’s failure to authorize Dr. DeFrancesch’s examination. The motion was denied on October 28, 2011. EMS gave notice of intent to seek supervisory writs, which was denied on November 15, 2011, for lack of timeliness.
Ms. Hill also filed a motion and order to hold EMS in contempt on November 9, 2011, for EMS’s failure to timely authorize a discogram ordered by Dr. DeFrancesch. Trial on the motion for contempt was heard on January 9, 2012. Judgment was rendered by OWC on April 4, 2012, where, among other things, Ms. Hill’s status was *44 changed to SEB with zero earning capacity from September 30, 2010, to September 29, 2011, and EMS was ordered to pay an additional $2,000 in penalties and $3,500 in attorney fees. It is these two specific points of the judgment that EMS has timely appealed.
ASSIGNMENTS OF ERROR
There are four assignments of error by EMS:
1) [OWC] erred by disregarding its previous judgment from November 3, 2010, when holding on April 4, 2012 that “[EMS] properly reduced [Ms. Hill’s] TTD benefits to SEB on September 30, 2010.” The November 3, 2010 Judgment held that [Ms. Hill’s] SEB rate as of December, 2009 was $486.74; therefore, [Ms. Hill] was not [receiving] TTD on September 30, 2010.
2) [OWC] erred in holding that [Ms. Hill] was entitled to SEB after September 30, 2011 based on a post injury earning capacity of zero.
3) [OWC] committed legal error when it applied the penalty provisions of [La. R.S.] 23:1201(G) to a partial judgment | (¡rendered on October 5, 2011, which was not final or immediately appealable.
4) Assuming that [OWC] did not commit legal error when applying La. R.S. 23:1201(G), [OWC] committed manifest error in awarding [Ms. Hill] $3,500 in attorney fees for [EMS’s] failure to timely pay the October 5, 2011 judgment.
STANDARD OF REVIEW
“Factual findings in a workers’ compensation case are subject to the manifest error standard of review. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one.” Russell v. Regency Hosp. of Covington, LLC, 2008-0538, p. 5 (La.App. 1 Cir. 11/14/08), 998 So.2d 301, 305, (citations omitted). An appellate court reviews the OWC’s decision to award penalties and attorney fees using the manifest error/elearly wrong standard of review. Id. at 306. If it is determined that penalties and attorney fees are incorrectly awarded, the appellate court then conducts a de novo review of the record to correct the legal error and apply the law correctly to that issue. Id.
DISCUSSION
In the first assignment of error, EMS takes issue with the April 2012 judgment’s language, which states that “Defendant properly reduced claimant’s TTD benefits to SEB on September 30, 2010 to 9/29/2011” when the record shows that TTD benefits were terminated on May 31, 2009. EMS contends that failure to correct the discrepancy will allow Ms. Hill the opportunity to file another disputed claim for compensation for TTD benefits for the December 2009 to September 2010 time period, to which EMS claims she is not entitled pursuant to the November 3, 2010 judgment.
We must first determine if this wording of the April 2012 judgment is the result of a reasonable deduction of the facts entered into the record. In 17its reasons for judgment, OWC seemed unclear as to Ms. Hill’s true status, stating “[a]s to the issue of indemnity benefits, whether TTD or SEB and whether or not claimant had ‘retired’ from the workforce.... ” It is evident from these words that OWC did not believe Ms. Hill’s actual status was germane to what amount the benefits should be. It is clear from the record, however, that Ms. Hill was on TTD status *45 from April 19, 2007, to May 31, 2009, and her SEB status began June 1, 2009, continuing onward.
The judgment of November 3, 2010 reduced the SEB paid to Ms. Hill to $486.74, beginning December 1, 2009, which coincides with Ms. Hill’s starting work as an emergency room technician at Ochsner Baptist. The judgment further awarded EMS a credit for overpayments made “between December 2009 and September 30, 2010.” This language is not specific, but it can be logically assumed that the operative date is December 1, 2009, since the date is previously mentioned in the judgment and the benefits payments are monthly. Viewing the November 2010 and the April 2012 judgments side by side, OWC extended the reduction of benefits from September 30, 2010 to September 29, 2011. OWC based this reduction on Dr. Stewart’s original opinion that Ms. Hill was able to perform sedentary work, which changed on or about August 23, 2011, when he stated she was unable to work at any job. The OWC therefore reasonably concluded that Ms. Hill’s benefits were properly reduced from September 30, 2010 to September 29, 2011 in the April 2012 judgment.
Although we find the judgment with respect to this issue correct and reasonable, we find the wording of the sentence of which EMS complains to be misleading. Ms. Hill’s status had clearly been changed from TTD to SEB long before April 4, 2012, and the inclusion of TTD on issue 3 of the judgment is unnecessary. Ms. Hill merely states in her brief that the Isoversight is harmless error, but provides no law or jurisprudence to support this argument. Out of an abundance of caution to prevent any unnecessary litigation, we amend the April 4, 2012 judgment as follows: “Defendant properly reduced claimant’s TTD benefits to SEB on September 30, 2010 to 9/29/2011” shall be changed to “Defendant properly reduced claimant’s benefits from September 30, 2010 to September 29, 2011.” This modification in no way interferes with the OWC’s appreciation of the facts or its ultimate decision.
As to EMS’s second assignment of error, we find the OWC was reasonable in its finding that Ms. Hill was entitled to SEB at a post-injury earning capacity of zero. OWC based its findings on Dr. Stewart’s assessments in August and September 2011, where he concluded that Ms. Hill could no longer do any work due to injuries to her sacroiliac joint located in her left hip. Dr. Steiner’s opinion differed slightly in that he felt she could perform light duty, and he also was of the opinion that Ms. Hill’s back pain was unrelated to her April 11, 2007 accident. OWC thus premised its decision on this issue partly from Dr. Stewart’s assessments and partly from Dr. Steiner’s assessments, which, as the fact finder, the OWC has the prerogative to do. While EMS points out that the vocational rehabilitation counselor found job positions that were sedentary in nature that Ms. Hill might have been able to perform, the OWC reasonably disagreed and relied on the opinions of the doctors to find that Ms. Hill was incapable of working any job after September 30, 2011. Where there are two permissive views of evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Lewis v. State Through Dept. of Transp. and Development, 94-2370 (La.4/21/95), 654 So.2d 311, 314.
|3In the third and fourth assignments of error, EMS states OWC’s award of additional attorney fees and penalties for failure to timely pay the October 5, 2011 order was legal error. We agree. OWC’s justification for awarding the additional penalties and fees was that since EMS did not seek a stay or review of the *46 issue, the thirty-day period by which EMS was ordered to pay was never suspended. However, this rationale is of no moment. Courts of this state have recognized that under La. R.S. 23:1201(G), an employer is liable for penalties and attorney fees if it does not pay an award payable under a final, nonappealable judgment within thirty days. Harrington v. Coastal Construction and Engineering, 96-681, p. 6 (La.App. 3 Cir. 12/11/96), 685 So.2d 457, 461, writ denied, 97-0109 (La.3/7/97), 689 So.2d 1375; Fallen v. City of New Orleans, 99-0656 (La.App. 4 Cir. 12/15/99), 753 So.2d 910, 912, writ denied, 2002-0702 (La.5/3/02), 815 So.2d 823. In the instant ease, the October 5, 2011 judgment is an interlocutory judgment, as the issue of Ms. Hill’s disability status was not resolved in that judgment, but only the preliminary matters of the motion to compel and the penalty and attorney fee awards. The OWC also regarded the October 5, 2011 judgment as interlocutory when it denied EMS’s motion for new trial and motion for leave to file supervisory writ. Therefore, we reverse the trial court in the instant case, insofar as the April 4, 2012 judgment awarded penalties and attorney fees. With that portion of the judgment set aside, EMS’s fourth assignment of error is moot.
CONCLUSION
While we do not disagree with the trial court’s decision with regard to the reduction of benefits from September 30, 2010 to September 29, 2011, we will modify that portion of the April 4, 2012 judgment for the sake of clarity. We affirm the OWC ruling to modify Ms. Hill’s SEB status to zero |10earning capacity as of September 30, 2011, as we do not find the decision to be manifestly erroneous. We reverse and vacate the April 4, 2012 award of penalties in the amount of $2,000 and attorney fees in the amount of $3,500.
DECREE
The April 4, 2012 judgment in the instant case is hereby modified to read, “Defendant properly reduced claimant’s benefits from September 30, 2010 to September 29, 2011.” The judgment’s imposition of $2,000 in penalties and $3,500 in attorney fees against the appellant, New Orleans EMS, is reversed and vacated. The judgment in all other respects is affirmed.
JUDGMENT MODIFIED IN PART, AFFIRMED IN PART, REVERSED IN PART, AND VACATED IN PART.

. EMS alleges this adjustment was calculated from the salary of the lowest paying job recommended by Mr. Ducote.

. EMS alleges this amount is based on Ms. Hill’s hourly wage at Ochsner Baptist.